UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ANN LUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV515 HEA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court  under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Michael Ann Lyng ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.,  and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g) et seq.  Plaintiff filed a Brief in Support of the Complaint. Defendant filed a Brief in Support of the Answer.

## I.

## PROCEDURAL HISTORY

Plaintiff applied for benefits on February 18, 2006, alleging a disability onset date of January 2, 2004.  Following an unfavorable determination, Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ").  On June 8, 2008, a hearing was held before an ALJ.  On July 9, 2008, the ALJ found that Plaintiff was not disabled through the date of the decision.  Plaintiff sought review of the ALJ's decision with the Appeals Council. On January 27, 2010, the Appeals Council denied Plaintiff's request for review.  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II

## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  *Id.*  "The sequential evaluation process may be terminated

at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) (citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); *Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). Fifth, the severe

impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3; *Young*, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.* See also *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); *Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). See

- 4 -

also *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  In *Bland v. Bowen*, 861

F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the
> weight of the evidence and it allows for the possibility of
> drawing two inconsistent conclusions, thus it embodies a zone
> of choice within which the Secretary may decide to grant or
> deny benefits without being subject to reversal on appeal.

See also *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not

reverse merely because substantial evidence exists for the opposite decision.")

(quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)); *Hartfield v.

Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's

final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the

factual record de novo. *Cox*, 495 F.3d at 617; *Guilliams v. Barnhart*, 393 F.3d

798, 801 (8th Cir. 2005); *McClees v. Shalala*, 2 F.3d 301, 302 (8th Cir. 1993);

*Murphy v. Sullivan*, 953 F.2d 383, 384 (8th Cir. 1992).  Instead, the district court

must simply determine whether the quantity and quality of evidence is enough so

that a reasonable mind might find it adequate to support the ALJ's conclusion.

*Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228

F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ,

who is the fact-finder. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987).  See

also *Onstead v. Sullivan*, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's

decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.  See also *Eichelberger*,  390 F.3d at 589; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (quoting *Terrell v. Apfel*, 147 F.3d 659, 661 (8th Cir. 1998)); *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected  to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

*Baker v. Sec'y of Health & Human Servs.*, 955 F.2d. 552, 555 (8th Cir. 1992);

*Polaski*, 739 F.2d at 1322. The absence of objective medical evidence is just one

factor to be considered in evaluating the plaintiff's credibility. *Id.* The ALJ must

also consider the plaintiff's prior work record, observations by third parties and

treating and examining doctors, as well as the plaintiff's appearance and demeanor

at the hearing. *Polaski*, 739 F.2d at 1322; *Cruse*, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the

inconsistencies in the record which cause him to reject the plaintiff's complaints.

*Guilliams*, 393 F.3d at 801; *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir.

2004); *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003); *Hall v. Chater*, 62

F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains

inconsistencies; the ALJ must specifically demonstrate that he considered all of

the evidence. *Robinson*, 956 F.2d at 841; *Butler v. Sec'y of Health & Human*

*Servs.*, 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly

discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.

2004).  See also *Steed*, 524 F.3d at 876 (citing *Lowe v. Apfel*, 226 F.3d 969, 972

(8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. *Id.*

Although credibility determinations are primarily for the ALJ and not the court,

the ALJ's credibility assessment must be based on substantial evidence. *Rautio v.*

*Bowen*, 862 F.2d 176, 179 (8th Cir. 1988); *Millbrook v. Heckler*, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *Nevland*, 204 F.3d at 857 (citing *McCoy v. Schweiker*, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. *Goff*, 421 F.3d at 790; *Nevland*, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. *Goff*, 421 F.3d at 790; *Nevland*, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used.  An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. *Goff*, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations

supported by the record as a whole in the hypothetical."); *Rautio*, 862 F.2d at 180.

Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the

plaintiff's subjective complaints of pain for legally sufficient reasons. *Baker v.*

*Barnhart*, 457 F.3d 882, 894-95 (8th Cir. 2006); *Carlock v. Sullivan*, 902 F.2d

1341, 1343 (8th Cir. 1990); *Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir. 1989).

## III

## DISCUSSION

The issue before the court is whether substantial evidence supports the

Commissioner's final determination that Plaintiff was not disabled.  *Ostead*, 962

F.2d at 804.  Thus, even if there is substantial evidence that would support a

decision opposite to that of the Commissioner, the court must affirm his decision as

long as there is substantial evidence in favor of the Commissioner's position. *Cox*,

495 F.3d at 617; *Krogmeier*, 294 F.3d at 1022.

Plaintiff testified at the hearing that she had graduated from high school and

had about 90 hours of college; that she had last worked for a couple of weeks in

2004 for a catering company; that prior to the catering company, she had worked at

a wholesale retail store that sells beads and findings for about six or seven months;

that she had worked for a jeweler for a year and a half in sales; that she believed

she could not work because of her bipolar illness and the medication she takes; that

she cannot function the way she used to; that she had good days and bad days; that

- 10 -

she tired easily; that she didn't have the "drive" or the "get up and go" that she used to; that she had trouble concentrating; that she had a terrible time finishing things; that she was easily distracted; that she was not as good with customers as she used to be.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that Plaintiff had the medically determinable impairments of mild asthma, sinusitis and bipolar disorder in remission.  The ALJ also found that Plaintiff has a history of alcohol and prescription drug dependence, in substantial remission; that Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work related activities for 12 consecutive months, therefore, she did not have a sever impairment ro combination of impairments.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ erred in finding that Plaintiff's bipolar disorder was in remission, because the ALJ misunderstanding of the nature of Plaintiff's bipolar illness led him to take statements from Plaintiff's treating healthcare providers out of context to attempt to show that Plaintiff's bipolar disorder was under control, when in fact it, all the medical evidence and Plaintiff's own testimony indicated that Plaintiff had been able to control the manic portion of her bipolar illness, but suffered from the depression aspect of the illness.  Furthermore, Plaintiff argues

that because her treating counselor's records were not attached, as indicated, the ALJ should have requested same in order to fully develop the record.

Plaintiff also argues that the ALJ erred in failing to make a residual function capacity determination as to her severe mental impairment combined with her severe breathing problems.

**A.    Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues.  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  *Guilliams*, 393 F.3d at 801; *Hutsell*, 892 F.2d at 750; *Benskin*, 830 F.2d at 882. To the extent that the ALJ did not specifically cite *Polaski*, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. *Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004); *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 2000); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each *Polaski* factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately

explained and supported, credibility findings are for the ALJ to make. See *Lowe v.*
*Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). See also *Tucker v. Barnhart*, 363 F.3d
781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as
long as the analytical framework is recognized and considered."); *Strongson*, 361
F.3d at 1072; *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).  In any case,
"[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to
decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir.
2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good
reason for doing so, [a court] will normally defer to the ALJ's credibility
determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  See also
*Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d
902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons
offered by the ALJ in support of his credibility determination are based on
substantial evidence.

First, the ALJ considered that Plaintiff's bipolar disorder was controlled by
medication. Plaintiff was brought to the Emergency Room of Barnes-Jewish
Hospital on March 20, 2004 by police for abusive behavior.  Plaintiff was
prescribed Klonopin for her depression, increased Wellbutrin, and Lithium was
replaced with Lamictal.  Plaintiff was diagnosed with Behavior Adjustment
Disorder (BAD), mixed episode, Ativan and history of ethanol abuse.  Plaintiff was

assessed with a Global Assessment Function, (GAF), of 20.[1]  Plaintiff stayed at the hospital for nine days prior to being transferred to Metropolitan St. Louis Psychiatric Center on March 29, 2004, in accordance with a court ordered 21 day admission.  On discharge from Barnes-Jewish, it was noted that Plaintiff had characteristics of hypomania.  Medication adjustments were made.  Plaintiff was given a GAF of 45.[2]

The Records indicated that the psychiatrist at Metropolitan noted Plaintiff had been in good health.  A mental status examination revealed normal speech, logical thought, appropriate affect, and improved judgment and insight.  No suicidal thoughts, hallucinations, or delusions were demonstrated by Plaintiff at that time.

Plaintiff began treatment with Dr. Susan Minchin in April, 2004.  Plaintiff reported that she had been sober for a year and a half.  Her relapse of drug abuse had been once with prescription drugs.  Plaintiff reported her mood as "pretty good," but that she suffered from insomnia and anxiety.

---

[1]  A Global Assessment Function of 20 indicates "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g.sometimes incoherent, acts grossly inappropriately, suicidal preoccupation or inability to function in almost all areas (e.g. stays in bed all day; no job, home or friends). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (Text Revision 4th ed. 2000).

[2]  A GAF of 45 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep jobs). DSM-IV-TR (Text Revision 4th ed 2000).

In May, 2004, Plaintiff reported an incident of a seizure-like episode with shaking all over her body.  She said she was sleeping and eating well; that her mood was neutral and content; that her concentration was okay; that she was reading.  Plaintiff reported hobbies.

Plaintiff reported to Dr. Minchin that her mood was pretty good; that she read fiction books; that her concentration continued to improve.  Plaintiff cooked, cleaned, kayaked, attended Alcoholics Anonymous meetings regularly.  Plaintiff stated that she slept 12 hours every night and took daily naps.  Plaintiff's medication was decreased to aid in boosting her energy and reducing her sleepiness.


Plaintiff reported at her next visit to Dr. Minchin a month later that she was no longer taking naps during the day and that her energy had "much improved" Plaintiff reported decreased motivation and depressed mood that was transient and did not last all day.

Plaintiff subsequently reported increased energy. She was sleeping eight to nine hours per night with no naps during the day. Plaintiff's mood was normal and she had slightly increased motivation.  Plaintiff had gone on vacation and was trying to exercise.  Plaintiff was also advised Dr. Minchin that she was looking for a job.

Plaintiff sought treatment from Dr. Robert Onder, an allergy and asthma doctor.  She complained of cold symptoms with drainage and coughing Dr. Onder's diagnosis was mild asthma, chronic sinusitis, and classic vocal cord dysfunction.

Plaintiff returned to Dr. Minchin in December 2004, with good mood, sleep, and energy. She was attending AA meetings twice per week and wanted to start exercising again. She had been working a full-time catering job for the past two weeks.  Plaintiff denied side affects to her medication. A mental status examination showed good eye contact, logical thought, and optimistic mood No hallucinations, paranoia, or suicidal thoughts were noted.

Plaintiff reported a "blah" mood in January, 2005.  Plaintiff's appetite and sleep were good.  She was looking for a job and was ready to go back to work.  Plaintiff denied anxiety and pseudo-seizures.  Plaintiff stated that her concentration was normal.  Dr. Minchin assessed Plaintiff with depressive symptoms and adjusted her medication   In July 2005, Plaintiff reported a one-day relapse on benzodiazepines.  She also reported episodes of abusive behavior.  Dr. Minchin observed restricted affect and multiple inconsistencies in thought. Plaintiff's medication was altered by Dr. Minchin at that time.

In February 2005, Plaintiff returned to Dr. Onder complaining of yellow drainage, congestion, and mild wheezing.  In April 2005, Plaintiff continued to

report coughing and a congested nose.  Plaintiff was diagnosed with mild shortness

of breath and mild wheezing. She again reported coughing in July and November

2005.  Plaintiff reported that she was "80%

better" about a week later.   Dr. Onder noted that Plaintiff's asthma exacerbation

was "resolving."  Spirometry testing revealed mild obstruction. Plaintiff returned to

Dr. Onder in June 2006, reporting another spell of congestion and wheezing.

Plaintiff was again diagnosed with sinusitis and asthma.  Plaintiff continued to see

Dr. Onder the remainder of 2006 for medication maintenance.

        Plaintiff returned to Dr. Minchin for mental health treatment in June, 2006.

She reported stable mood for the past year.  Her last seizure was one-and-a-half

years ago.  Plaintiff described her sleep as "great" and her appetite as "good."

Plaintiff had been working for a friend who made jewelry. She also was taking care

of her mother, who had broken her hip. A mental status examination showed

logical thought and normal mood.  Dr. Minchin noted that Plaintiff was doing well.

        In January 2007, Plaintiff reported that she had been slightly

stressed over the holidays.   She reported good mood, sleep, and appetite.

Medication was helping her concentration; she was reading for fun and watching

television.  Dr. Minchin concluded that Plaintiff's symptoms were in remission

Four months later, Plaintiff reported that she was "a little wheezy" after returning

from vacation in Kentucky and North Carolina.  Plaintiff was diagnosed with

asthma, stable nasal polyps, and mild tobacco use.

Plaintiff had a visit with Dr. Minchin in October 2007.  She reported that her asthma was under control. She had not had a seizure-like episode the past two or three years. She was sleeping well and felt refreshed when she woke up in the morning.  Her appetite was good; her mood was okay.

Plaintiff said she felt "a little down" and wanted more energy. She did report that she was walking her dog, performing housecleaning, going shopping, and taking care of her chronically ill mother. Plaintiff reported no problems with concentration and no side affects to her medication.  Her mental status examination was normal.  Dr. Minchin concluded that Plaintiff's mental impairments were still in remission.   Conditions which can be controlled by treatment are not disabling. See *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *Murphy*, 953 F.2d 383, 384 (8th Cir. 1992)*; Warford v. Bowen*, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); *James for James v. Bowen*, 870 F.2d 448, 450 (8th Cir. 1989).  The court finds, therefore, that the ALJ properly considered the extent to which Plaintiff's conditions were controlled by medication and treatment and that

substantial evidence supports the ALJ's decision in this regard.

The ALJ heard Plaintiff's testimony at the administrative hearing on June 9, 2008.  From this testimony, the ALJ considered Plaintiff's daily activities.  Plaintiff testified that she was a 46-year old high school graduate with about 90 hours of college credit.  She worked for a  catering company in December 2004 for only 2 weeks because they did not need her as long as they thought.  Plaintiff testified that she drove herself to the hearing. She cooked, cleaned, did laundry, walked her dog, shopped for groceries, cared for her 80-year-old aunt, and helped her ill mother run the household.  Plaintiff had no problems with personal care.  She attended daily AA meetings. She regularly read books, including biographies and mysteries).  She also went to estate sales.  She took a trip to visit a friend in South Carolina, and she had previously gone on vacation with her parents to Nova Scotia three years ago. She regularly interacted with friends.

While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of her complaints. *Eichelberger*,  390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); *Dunahoo v. Apfel*, 241 F.3d 1033,

1038 (8th Cir. 2001); *Onstead*, 962 F.2d at 805; *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992); *Benskin*, 830 F.2d at 883; *Bolton v. Bowen*, 814 F.2d 536, 538 (8th Cir. 1987).

Plaintiff said she could no longer work because of fatigue, lack of motivation, and concentration problems. The only side affect she had was fatigue, so she took her medications at night. Plaintiff further testified that she had not been hospitalized since 2004. She saw Dr. Minchin every six months to "basically check in" and make sure that her medications were still working. Her mental condition had been stable the last four years with medication. She could recognize any manic symptoms and report them to Dr. Minchin, who would adjust her medication accordingly. Plaintiff also saw a doctor for asthma, which was her only physical problem. Her asthma did not bother her when she worked in retail Plaintiff said she had not used alcohol in six years; she had two relapses when she abused prescription drugs, which each lasted one day.

"Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish her credibility." *Goff*, 421 F.3d at 792 (citing *Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999)). See also *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) ("Although the ALJ may have overstated [the claimant's] daily activities, the record indicates that [the claimant] is\ generally able to care for himself."); *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001); *Nguyen v.*

*Chater*, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).  The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of inability to work.  The court further finds that substantial evidence supports the ALJ's decision in this regard.

The record does not reflect that any physician imposed any restrictions on Plaintiff's ability to work.  A record, such as that in the matter under consideration, which does not reflect physician-imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See *Zeiler*, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); *Fredrickson v. Barnhart*, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily.").  The court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Plaintiff contends that the ALJ did not properly consider Plaintiff's treating therapist's opinion, since Ms. Caine's treating notes were not attached to her

questionnaire, as indicated. Ms. Caine's stated in her questionnaire that Plaintiff has had trouble with her medications and her mood swings from Bipolar illness, which Ms. Caine states was "recently diagnosed." This questionnaire was dated March 28, 2006.

On June 6, 2008, Ms. Caine noted that Plaintiff suffered for many years with undiagnosed BAD, and that her mental illness was compounded by her addiction to alcohol and non-prescription drugs. Ms. Caine further stated that Plaintiff has been participating in therapy with her since February, 2005. Ms. Caine opined that in spite of continued therapy, Plaintiff had been unable to get back into the job market; that Plaintiff had many relapses over the last three years and that Plaintiff continued to struggle with her illness and use of alcohol and non-prescription drugs. Ms. Caine also noted that Plaintiff was under the care of a good psychiatrist and was functioning at a higher level due to Plaintiff's understanding of her illness and her abstinence from alcohol and drugs. Ms. Caine noted that Plaintiff had a clear commitment to her therapy and as such, has worked through her crises. Ms. Caine urged Plaintiff to apply for disability support to assist her.

As stated, Ms. Caine's treatment notes were not attached to the questionnaire. However, Plaintiff's attorney acknowledged at the hearing that the record was complete. Additionally, Ms. Caine's questionnaire summarizes her conclusions with regard to Plaintiff's condition. The records that were available

show that Plaintiff's condition improved with medication and that Plaintiff was

committed to remaining sober and had not abused drugs, both of which would

contribute to Plaintiff's ability to conduct her daily activities.

The ALJ considered that Dr. Minchin frequently reported that Plaintiff's

symptoms were under control and that medication helped

The ALJ submitted a hypothetical to a VE which included all of Plaintiff's

limitations which the ALJ found credible. An ALJ posing a hypothetical to a VE is

not required to include all of a claimant's limitations, but only those which he finds

credible. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's

hypothetical question to the vocational expert needs to include only those

impairments that the ALJ finds are substantially supported by the record as a

whole.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006));

*Guilliams*, 393 F.3d at 804 (holding that a proper hypothetical sets forth

impairments supported by substantial evidence and accepted as true by the ALJ);

*Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical

questions to a vocational expert, an ALJ must include all impairments he finds

supported by the administrative record.").

The VE testified that there was work available in the local and national

economy, in significant numbers, which a person of Plaintiff's age, education,

work history, could perform.  Where a hypothetical question precisely sets forth all

of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. *Martise*, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix*, 465 F.3d at 889); *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); *Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990).

In determining whether Plaintiff suffered from a severe impairment, the ALJ discussed the various factors used to determine whether Plaintiff was significantly limited to perform basic work related activities.  The ALJ assessed Plaintiff's physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  Based on Plaintiff's own testimony of her daily activities, symptoms, mood, abstinence from alcohol and improper use of drugs; maintaining her medication regimen and her therapy, the ALJ concluded Plaintiff was not severely impaired.  There is no evidence to the contrary as to

- 24 -

Plaintiff's ability to function in a basic work environment.  Plaintiff's sole complaint is that she lacks the "get up and go" she used to have.  The Court concludes that the ALJ's decision is supported by substantial evidence in the record.

## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is denied.

A  separate judgment is entered this same date.

Dated this 28th day of September, 2012.


_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE